UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
JOSE MANUEL PEREZ

               Plaintiff,           Index No.: 02-CV-05339

     - against -            **MEMORANDUM OF LAW**
                                   **IN SUPPORT OF**
PETSMART, INC.,              **MOTION TO DISQUALIFY**
               Defendant.
-----------------------------------------------------------------x

## BACKGROUND

1.     In the present case, the law firm of Littler Mendelson, P.C. located at 900 Third Avenue, New York, New York 10022 ("Littler") currently represents defendant PetSmart, Inc. ("PetSmart") in the present action. However, Littler is simultaneously engaged in the representation of all four (4) of the defendants in the concurrent action <u>Perez v. Lopez, et al</u>. (Index No. 39590/2010) currently pending before the Supreme Court of New York, Suffolk County.

2.     The actions against both defendant PetSmart and defendants Jenny Lopez ("Lopez"), Jaclyn Irma Yeh ("Yeh"), Yicinniya Williams ("Williams") and Victoria Rahn (Rahn") arise from the same series of occurrences involving all five defendants. Specifically, both actions allege that Plaintiff Jose Perez was wrongfully terminated from his employment by defendant PetSmart as a result of the false, malicious and defamatory statements made by defendants Lopez, Yeh, Williams and Rahn that Plaintiff had sexually harassed defendant Lopez.

3.     Plaintiff originally filed both actions in the Supreme Court of New York, Suffolk County with the intention of joining both actions based upon the common occurrences and the common questions of law and fact which would arise in both actions. However, on November 18, 2010, merely one (1) day after Plaintiff filed his Verified Complaint against defendants

Lopez, Yeh, Williams and Rahn in compliance with Defendants' Demand for Complaint, and before Plaintiff Perez had an opportunity to join the two actions, Defendant PetSmart removed the action against it to the U.S. District Court for the Eastern District of New York ("E.D.N.Y.") based upon diversity jurisdiction.

4.      Thereafter, on December 22, 2010 Plaintiff submitted a Motion to Join and Remand the two actions to the state court where they were originally filed in order to (1) ensure judicial economy, (2) conserve counsels' resources, (3) avoid the possibility of multiple trials arising out of the same sequence of events, and (4) avoid the possibility of inconsistent findings of fact and conflicting outcomes.

5.      While the principles of fundamental fairness warrant that joinder would be fair to all parties and would promote judicial economy by allowing all common issues to be resolved in one lawsuit, because the interests of PetSmart on the one hand, and defendants Lopez, Yeh, Williams and Rahn, on the other hand, are disparate to each other, the dual representation of these Defendants by Littler presents a conflict of interest in violation of the New York Rules of Professional Conduct and other professional responsibility laws, both under Federal and New York State law.

6.      Secondly, Defendant's counsel, Littler, and specifically it's attorney David S. Warner, Esq., ("Warner") the attorney of record in this action, should be disqualified from representing PetSmart against plaintiff Perez by virtue of Warner and Littler's fiduciary obligation and professional relationship with plaintiff Perez.

7.      Furthermore, Defendant's counsel should be disqualified from representing PetSmart in this action due to its violation of the New York Rules of Professional Conduct, Rule 4.1 regarding truthfulness in statements to others.

8.      Plaintiff submits this Motion to Disqualify Defendants Counsel at this early stage of the proceedings before the individual employee Defendants Lopez, Yeh, Williams and Rahn have yet to file an answer, while the discovery process has not yet commenced in either action and while no dates have been set for trial. Thus, the timely filing of this motion provides the opportunity to avoid any further conflicts of interest, breaches of fiduciary duty and violations of the Rules of Professional Conduct and the preservation of client confidences or, at the very least, limit the potential prejudice which would result to the parties.

## NEW YORK RULES OF PROFESSIONAL CONDUCT

9.      According to the New York Lawyer's Code of Professional Responsibility, DR 5-108, a lawyer shall not represent a client "in the same or substantially related matter in which that person's interests are materially adverse to the interest of a former client".

10.     Furthermore, a conflict of interest arises when that lawyer is privy to confidences or secrets of a former client and now represents a client whose interests are materially adverse to that person.

11.     While plaintiff Perez never formally retained the services of Littler, New York law protects relationships created by fiduciary obligations and implied professional relationships which may exist in the absence of a formal attorney-client relationship.

12.     In the present case, during his employment with defendant PetSmart, plaintiff Perez worked extensively with Defendant's counsel Litter and specifically with attorney Warner, on two (2) wrongful termination cases involving two former PetSmart employees, Mr. Lochian and Mr. Smalls. During the course of these cases, a fiduciary obligation and an implied professional relationship was established between Perez and Littler and Warner.

3

13.     Moreover, the present action, which involves Plaintiff's wrongful termination from defendant PetSmart is the same type of case in which plaintiff Perez worked extensively with Warner and Littler during the two previous matters.

14.     As an additional concern, during the course of their relationship, plaintiff Perez discussed personal and confidential matters with defendant's counsel Warner and Littler.

15.     In the interests of protecting the confidences of plaintiff Perez and prevent defendant PetSmart from now using such personal information to his detriment, Defendant's counsel should be disqualified from the representation of defendant PetSmart.

<u>The Potential for Conflicting Interests Creates a Conflict of Interest</u>

16.     According to New York Rules of Professional Conduct, Rule 1.7(a), "a lawyer shall not represent a client if a reasonable lawyer would conclude that [ ] the representation will involve the lawyer in representing differing interests". (22 NYCRR 1200.0 Rule 1.7).

17.     The Second Circuit previously explained that an actual conflict of interest arises "when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action". <u>United States v. Schwartz</u>, 283 F. 3d 76, 91 (2nd Cir. 2002) quoting <u>Winkler v. Keane</u>, 7 F. 3d 304, 307 (2nd Cir. 1993).

18.     In <u>Paladino v. Skate Safe, Inc., et al.</u> (2010 WL 3359550 (N.Y. Sup.), 2010 NY Slip Op 51512), the court identified several reasons why defendants' counsel was disqualified from representing both a defendant-employee and defendant-employer.

19.     In <u>Paladino</u>, the court found a clear conflict of interest for the parties' counsel when the interests and defenses of the two defendants failed to remain aligned. In that case, the question arose of whether the defendant-employee was acting within or outside the scope of

4

his employment at the time of the incident. The court found that this argument placed the interests of the defendant-employer squarely before the interests of the defendant-employee. Should a trier of fact determine that the employee was acting outside the scope of his employment, the defendant-employer would escape liability which would thereby fall entirely on the defendant-employee. The court explained that "the employer [ ] is attempting to separate itself from the employee's actions, which would be to its benefit (dismissal) and potentially harmful to the employee." (Id.)

20.     The facts of the present case are closely analogous to those of Paladino. In this case, as in Paladino, the issue of whether defendant-employees Lopez, Yeh, Williams and Rahn were acting within or outside the scope of their employment with defendant-employer PetSmart is of central importance to this case and the determination of liability. As in Paladino, this issue presents an unavoidable conflict of interest and a further divergence between the defenses and interests of the defendants.

21.     According to the New York Lawyer's Code of Professional Responsibility, EC 5-15, "if a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests… the lawyer should resolve all doubts against the propriety of representation".

<u>Special Circumstances in Cases Involving Allegations of Sexual Harassment</u>

22.     Cases involving allegations of sexual harassment pose additional issues relating to conflicts of interest. During the course of such a case, the interests of the defendants may become adverse when an employee charged with making defamatory allegations of sexual misconduct feels compelled to litigate a claim, while the defendant-company may wish to settle.

23.     Moreover, in addition to strategic defense conflicts, tactical issues can arise. In cases where statements regarding sexual misconduct underlie an action, employee-defendants who are likely to be less than forthcoming on the details of an alleged incident, become difficult litigation partners who can undermine the presentation of an effective defense by the defendant-employer.

24.     In the present case, the individual defendants in the state court action have made defamatory statements alleging sexual harassment by the Plaintiff which resulted in the termination of the Plaintiff's position with their employer, defendant PetSmart. Due to the severe reaction by PetSmart to the Defendants' allegations in terminating the Plaintiff's employment, the defendants will likely seek to staunchly defend their defamatory statements and allegations for fear of their employer, defendant PetSmart, discovering they fabricated the allegations made against Plaintiff, thus jeopardizing their own employment.

25.     However, should the evidence reveal that the individual Defendants did in fact fabricate the allegations against Plaintiff, the strategic posture and defensive positions of the Defendants will no longer remain aligned and instead stand directly opposed to one another. Due to the potential likelihood of this occurrence, the dual representation of both Defendants creates a high potential for this unavoidable conflict of interest.

26.     Moreover, the combination of factors where the representation of two defendants engaged in an employer-employee relationship in a case involving allegations of sexual misconduct is a potential violation of professional conduct and increases the likelihood of a conflict of interest.

27.     While the defendants may wish to argue that, at this time, the interests of the defendants remain aligned, in cases involving defendants engaged in an employer-employee

relationship and, to an even greater degree, in cases involving allegations of sexual misconduct, "there is no way of knowing if and when th[e] strategic posture [of a party] may change. <u>Shadid v. Jackson</u>, 521 F. Supp. 87 (E.D. Tex. 1981).

The Duty of Confidentiality, The Preservation of Client Confidences<br><u>and The Fiduciary Duty of Attorneys</u>

28.     Should the individual employee defendants reveal that they did in fact fabricate the defamatory statements made to their employer which induced the termination of Plaintiff's employment, Littler would be unable to divulge such information to its client PetSmart without violating their duties of confidentiality and attorney-client privilege with the individual employee defendants. Similarly, should action against defendant Lopez reveal a propensity and history of making (false) allegations of sexual harassment against other employers and supervisors Littler would be unable to divulge such information to its client PetSmart despite its relevance to Plaintiff's claim for negligent hiring. Moreover, such information would undermine Littler's ability to effectively defend the company. For these reasons, both State and Federal courts have looked to disqualify counsel based upon potentially adverse interests. <u>Paladino, *Supra*</u> at *2. See <u>Dunton v. Suffolk County, State of New York</u>, 729 F. 2d 903 (C.A.N.Y. 1984).

29.     In <u>Paladino</u> the court found that "an attorney should not continue representing two co-parties after a conflict of interest arises between them, because this would result in a violation of the rule requiring attorneys to represent a client zealously, and to preserve client confidences." (<u>Id</u>. See also, <u>Sidor v. Zuhoski</u>, 261 A.D.2d 529 (2nd Dep't 1999). Therefore, the court ruled that "once a conflict becomes apparent, the court should disqualify [an]

attorney from representing either [defendant]". (Citing <u>Shaikh v. Waiters</u>, 185 Misc. 2d 52 (Sup. Ct. Nassau County 2000).

30.      The reason the court in <u>Paladino</u> cites for disqualifying an attorney from continuing to represent either one of the defendants "is that the party who is no longer represented by the attorney may already have given confidences to the attorney, and may fear that this could be used against him in some fashion, to the advantage of the remaining client. The concern for maintaining client confidences is cited as a key reason for disqualification for adverse interests." (<u>Id</u>. See also, <u>Pellegrino v. Oppenheimer & Co.</u>, 49 A.D.3d 94, 98, (1st Dep't 2008), citing <u>Solow v. Grace & Co.</u>, 83 N.Y.2d 303, 1994).

31.    Moreover, in representing both an employer and employee, it is almost inevitable that communications between the employee-defendant and his attorney will be communicated to the employer-defendant and vise-versa, thereby violating the attorney-client privilege for each defendant.

32.    In the present case, the individual defendants in the state court action will undoubtedly share confidential information relating to the circumstances of their case with Littler. However, because Littler is simultaneously engaged in the representation of defendant PetSmart, the individual state court defendants' employer, such confidential information will prevent Litter from providing unimpaired judgment as required by its fiduciary duty to each client. Similarly, knowledge of confidential information revealed by employer-defendant PetSmart regarding their investigation of the individual defendant's allegations concerning the Plaintiff will similarly impair Littler's ability to provide unimpaired judgment. Moreover, the interests of the employer and employee must not "adversely affect counsel's judgment or dilute his loyalty". <u>Smith v. City of New York</u>, 611 F. Supp. 1080, 1088 (S.D.N.Y. 1985). As

the Second Circuit explained, "an attorney owes his client a duty of 'undivided loyalty'."

<u>Cinema 5 Ltd. v. Cinerama, Inc.</u>, 528 F.2d 1384, 1386 (2d Cir. 1976).

The Potential for Conflicts of Interest Requires Disqualification Regardless of Whether
<u>the Informed Consent of Each of the Defendants is Obtained</u>

33.     Under certain circumstances, client consent may provide a basis for permitting the

continued representation of defendants with adverse interests. According to the New York

Rules of Professional Conduct, Rule 1.7(b):

> "notwithstanding the existence of a concurrent conflict of interest under paragraph (a),
> a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer
> will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law; (3) the representation does not involve
> the assertion of a claim by one client against another client represented by the lawyer
> in the same litigation or other proceeding before a tribunal; and (4) each affected
> client gives informed consent, confirmed in writing." (22 NYCRR 1200.0, Rule
> 1.7(b)).

34.     However, even should both defendant PetSmart and defendants Lopez, Yeh, Williams

and Rahn provide this Court with written acknowledgement that they have each been fully

informed by their attorney of the implications of their simultaneous representation and have

each consented to same, defendants' counsel would fail to satisfy the "reasonable lawyer"

standard required by Rule 1.7(b)(1).

35.     According to the court in <u>Paladino</u>, the "reasonable lawyer" standard enumerated by

Rule 1.7(b)(1) requires that an attorney have a reasonable belief that the attorney "will be able

to provide competent and diligent representation to each affected client." (<u>Id</u>.) Such

9

determination, however, is not left to the subjective beliefs of the attorneys themselves but rather is reserved for the objective opinion of the Court.

36.     In Paladino, the court found that because the defendant-employer argued that the defendant-employee was acting outside the scope of his employment, thereby employing a defense to render the company free from liability, the interests of the two defendants were adverse. In asserting this defense, the employer-defendant's interests were placed ahead of the defendant-employee, who would thereby incur all liability for a potential judgment, alone, without any shared responsibility taken by the employer and without the potential insurance coverage of the employer. Based upon this reasoning, the court concluded that "this is one of those cases in which the dual representation is 'so fraught with the potential for irreconcilable conflict' that it cannot be allowed. (Id. Citing Greene v. Greene, 47 N.Y.2d 447, 451-452, 418 N.Y.S.2d 379 (1979).

37.     In the present case, the Plaintiff has alleged several causes of action for defamation based upon false statements made by the Defendants to their employer, PetSmart, while acting within the scope of their employment, as well as false statements made by Defendants to third parties. In their Motion to Dismiss the Complaint, defendants Lopez, Yeh, Williams and Rahn have already argued that their alleged defamatory statements were made within the scope of their employment and thus subject to a qualified privilege. (Despite that the defendants' improperly asserted the affirmative defense of qualified privilege in their pre-Answer motion to dismiss which can be asserted only in a Answer) the Defendants' argument evidences that it is their intent to assert the defensive position that any alleged defamatory statements were made in the context of their employment and, thus, they individually can not be personally liable for their actions and statements.

38.     However, this defensive posture is entirely adverse to the interests of their employer, defendant PetSmart, who, should the court find that the statements of defendants Lopez, Yeh, Williams and Rahn were in fact defamatory, will argue that defendants Lopez, Yeh, Williams and Rahn were acting outside the scope of their official duties, thereby partially or completely avoiding liability based on *respondeat superior*. Based upon these facts, the interests of the Defendants further diverge. Thus, to continue their joint representation, defendants Lopez, Yeh, Williams and Rahn would be forced to align their interests with those of their Employer.

39.     Additionally, while Littler may believe that arguing that defendants Lopez, Yeh, Williams and Rahn were acting within the scope of their employment is within their best interest, this argument imputes potential liability directly onto their employer PetSmart (based on the doctrine of *respondeat superior*), who Littler is representing concurrently in this action.

40.     Perhaps the greatest conflict of interest resulting from this dual representation is that the individual defendants will remain pressured to assume whatever defensive position their employer PetSmart advises of them so as to protect their employment positions and to ensure that their attorneys' fees remain the responsibility of their employer, despite that such defense may not be in their individual best interests.

41.     The New York Lawyer's Code of Professional Responsibility, Disciplinary Rules 5-107(B) warns that "a lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate his or her professional judgment in rendering such legal services, or to cause the lawyer to compromise the lawyer's

duty to maintain the confidences and secrets of the client under DR 4-101 [1200.19] (B) [Preservation of Confidences and Secrets of a Client]".

42.     Moreover, the interests of defendants Lopez, Yeh, Williams and Rahn will continue to remain influenced by those of their employer, PetSmart, for fear of incurring the sole personal responsibility of any possible judgment rendered in favor of the Plaintiff, without the benefit of his employer's insurance coverage, should the Court determine that they were in fact acting outside the scope of their employment. Thus, the specific circumstances of these actions create an insurmountable conflict of interest based upon an ethical violation and deprive each of the Defendants of a fair trial.

43.     While the disqualification of defendants' counsel is warranted based upon the dual representation of the defendants in these actions, should the court grant Plaintiff's Motion to Join and Remand (currently pending before this court), the defendants would become co-defendants and their counsel will then be engaged in the joint representation of adversely interested defendants, a clear conflict of interest under New York State law.

Defendant's Counsel Should be Disqualified for Violating the Rules of Professional Conduct, Rule 4.2; Truthfulness in Statements to Others

44.     According to the Rules of Professional Conduct, Disciplinary Rule 4.2, "in the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person".

45.     On or about December 9, 2010, during a teleconference between Littler, Plaintiff's counsel and this Court, while discussing Plaintiff's Order to Show Cause ("OTSC") which requested that PetSmart preserve all surveillance tapes relating to the dates in question, Littler represented that PetSmart had destroyed all video surveillance films relating to the dates in

question, and therefore, Plaintiff's OTSC was inconsequential.

46.       However, the law firm of Vecchione, Vecchione & Connors, LLP, which represents defendant PetSmart in Plaintiff Perez's Worker's Compensation Claim (WCB: G0239476), has informed Plaintiff's counsel that PetSmart retains surveillance tapes and would be introducing such video surveillance tapes in Plaintiff Perez's Worker's Compensation case.

47.       Based upon these facts, Litter's representation that all surveillance tapes relating to the dates in question had previously been destroyed directly conflicts with the fact that PetSmart, Littler's client, currently and continuously maintains surveillance tapes relating to legal claims and specifically relating to Plaintiff Perez.

## Conclusion

48.       Based upon the foregoing facts, Plaintiff has sufficiently established that defendants' counsel's continued representation of the defendant PetSmart and defendants Lopez, Yeh, Williams and Rahn presents an absolute conflict of interest in violation of the rules of professional conduct.

49.       As such, Plaintiff Jose Perez respectfully requests that this Court grant in its entirety:

(i)       Plaintiff's Motion for an Order disqualifying Littler Mendelson, P.C. from representing each of the Defendants;

(ii)      Enjoining Littler Mendelson P.C. from imparting or divulging confidential information to any of the Defendants;

(iii)     Staying all proceedings for a period of thirty (30) days to afford each Defendant the opportunity to appoint new counsel together with such other and further relief as this Court may deem just and proper; and

(iv)    Directing that Defendant PetSmart immediately produce all surveillance

records relating to the dates in question.

Dated: New York, New York
       February 2, 2011

 

 

_____
Leonard Zack, Esq.
Leonard Zack & Associates
405 Park Avenue
10th Floor
New York, New York 10022
(212) 754-4050