UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSE MANUEL PEREZ,

                               Plaintiff,                  MEMORANDUM
                                                                OPINION AND ORDER
           -against-

                                                                CV 10-5339 (LDW) (ETB)

PETSMART, INC.,

                               Defendant.
------------------------------------------------------------------X

       Before the Court is plaintiff's Second Motion to Disqualify defendant's counsel ("Motion") on the grounds of unwaivable conflicts of interest and violation of the duty of truthfulness in statements to others. For the reasons that follow, the Motion is DENIED.

## BACKGROUND

       In this action, which was removed to federal court on the basis of diversity, Plaintiff alleges that defendant wrongfully terminated him as a result of defamatory statements made by four PetSmart employees–Jenny Lopez, Jaclyn Irma Yeh, Yicinniya Williams, and Victoria Rahn (the "Employees"). (See Declaration of Leonard Zack ("Zack Decl.") at 2; Memorandum of Law in Support of Motion to Disqualify ("Plaintiff's Memo") at 1; Complaint at 7-9). The Complaint further alleges causes of action for negligent hiring, negligent supervision and retention, and breach of contract. (Complaint at 6-7). None of the Employees is a party here. However, the Employees are defendants in a state court action filed by plaintiff which arises from the same set of facts. (See Zack Decl. at 2). Although the Suffolk County Supreme Court dismissed that action, the dismissal is subject to plaintiff's pending motion for reconsideration. (See id. at 1-2).

       Defendant's attorneys, Littler Mendelson, represent PetSmart in this action and the four Employees in the state court action. Each of the four Employees has consented to the joint

representation. (See Declaration of David S. Warner in Opposition to Plaintiff's (Second) Motion for Disqualification ("Warner Decl."), at 1). Notwithstanding the consent, Plaintiff asserts that there is a conflict of interest which requires Littler Mendelson to be disqualified from representing PetSmart. (See Plaintiff's Memo at 4-7). Specifically, plaintiff contends that there is the potential for Littler Mendelson to argue that the Employees were acting outside the scope of their employment when they made the allegedly defamatory remarks, which would benefit PetSmart's defense but harm the defense of the Employees. (See id.). Plaintiff also argues that a scheme by which PetSmart pays for the defense of the Employees is unethical. (See id. at 11-12). Plaintiff further asserts that he formed an implied attorney-client relationship with Littler Mendelson when he was interviewed regarding two unrelated wrongful termination cases against PetSmart–one involving former PetSmart employee Raheem Smalls (the "Smalls Litigation") and one involving former PetSmart employee Raymond Lothian (the "Lothian Litigation"). (See Affidavit of Jose Manuel Perez ("Perez Aff.") at 1-3). Plaintiff states that he provided confidential information to Littler Mendelson during the course of this implied professional relationship. (See id. at 2-3; Plaintiff's Memo at 3-4). He argues that Littler Mendelson must be disqualified in order to prevent PetSmart from "using such personal information to [plaintiff's] detriment." (Plaintiff's Memo at 4). Finally, plaintiff asserts that Littler Mendelson should be disqualified because one or more attorneys at the firm knowingly misrepresented to plaintiff and the Court that surveillance video from the date relevant to plaintiff's claims here has been overwritten. (See Plaintiff's Memo at 12-13).

Defendants counter that there is no actual conflict of interest because PetSmart's interests are not adverse to the Employees' interests, and PetSmart's assumption of Employees' defense costs does not violate any ethical rules. (See Memorandum of Law in Opposition to Motion to Disqualify

("Opposition" or "Opp.") at 7-10, 15-16). Additionally, they argue that Littler Mendelson never formed an attorney-client relationship with Perez, nor did Perez ever impart confidential information to attorneys from Littler Mendelson. (Id. at 11-14). Lastly, they assert that they have not misled plaintiff or the Court regarding the videotape; rather, the tape has indeed been overwritten, and plaintiff's accusation is baseless. (Id. at 16-17). Defendants ask the Court to sanction plaintiff for bringing this Motion in bad faith. (Id. at 17-18). For the reasons that follow, plaintiff's scattershot Motion to Disqualify is denied.

## DISCUSSION

I.      Legal Standard for Attorney Disqualification

"[T]he disqualification of an attorney upon the motion of an adversary is a serious sanction that ought not to be imposed lightly. Indeed, it is well-established that [m]otions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are often interposed for tactical reasons and result in unnecessary delay." Gabayzadeh v. Taylor, 639 F. Supp. 2d 298, 300 (E.D.N.Y. 2009) (internal citations and quotation marks omitted). Because of "the serious impact of attorney disqualification on the client's right to select counsel of his choice, . . . such relief should only be granted when a violation of the [ethical rules] poses a significant risk of trial taint." Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981). The party urging disqualification of opposing counsel "bears a 'heavy burden' of demonstrating that disqualification is warranted." Gabayzadeh, 639 F. Supp. 2d at 300 (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 794 (2d Cir. 1983)).

II. <u>Littler Mendelson Does Not Suffer from an Actual Conflict of Interest Based on the Joint Representation of PetSmart and Its Employees</u>

New York Rule of Professional Conduct 1.7(a) states, "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." N.Y Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 1.7(a). Plaintiff contends that Littler Mendelson suffers from a conflict of interest because it represents PetSmart in this litigation and the four Employees in the state court litigation. He asserts:

> In their Motion to Dismiss the Complaint [in the state court action], defendants Lopez, Yeh, Williams and Rahn have already argued that their allegedly defamatory statements were made within the scope of their employment and thus subject to a qualified privilege . . . . [T]he Defendants['] argument evidences that it is their intent to assert the defensive position that any alleged defamatory statements were made in the context of their employment and, thus, they can not [sic] be personally liable for their actions and statements.
> However, this defensive posture is entirely adverse to the interests of their employer, defendant PetSmart, who, should the court find that the statements of defendants Lopez, Yeh, Williams and Rahn were in fact defamatory, will argue that defendants Lopez, Yeh, Williams and Rahn were acting outside the scope of their official duties, thereby partially or completely avoiding liability based on <u>respondeat superior</u>. Thus, to continue their joint representation, defendants Lopez, Yeh, Williams and Rahn would be forced to align their interests with those of their Employer, while foregoing a position which would better suit their interests.

(Zack Decl. at 5-6 (paragraph numbering omitted); <u>see also</u> Plaintiff's Memo at 10-11)). Plaintiff is incorrect for two reasons.

First, plaintiff's argument that Littler Mendelson has an incentive to argue that the Employees

4

were acting outside the scope of their employment does not make sense in this context. The Employees and PetSmart are participating in two separate litigations. In the state court action, there is no possibility that PetSmart will be held liable, no matter whether the court finds that the Employees were acting within or outside of the scope of their employment, because Petsmart is not a party to that action. Therefore, Littler Mendelson has no incentive to argue, in the state court case, that the Employees were acting outside of the scope of their employment.

The Court cannot conceive of a reason that PetSmart would have an incentive to contend, in this case, that the (non-party) Employees were acting outside the scope of their employment. Plaintiff's complaint alleges that PetSmart (1) hired and retained one of the Employees although it knew or should have known that she had made false reports of sexual harassment against co-workers (the negligent hiring and negligent retention and supervision causes of action); (2) breached an implied contract with plaintiff created by PetSmart's employee handbook and company manuals by firing him without engaging in the proper procedures (the breach of contract cause of action); and (3) discriminated against plaintiff when they fired him based on false accusations of sexual harassment which the Employees made because they dislike heterosexual men (the discrimination cause of action). (See Complaint at 6-8). To the extent that the scope-of-employment question is relevant to these causes of action, surely it would be to PetSmart's benefit to argue that it relied on reports of sexual harassment made by employees acting within the scope of their employment when it made the decision to terminate plaintiff. Put simply, Littler Mendelson has no reason to present conflicting arguments on this issue. There is no conflict of interest.

Second, even if Littler Mendelson had an incentive to present conflicting arguments on the scope-of-employment issue, there is no reason to disqualify the firm because it has given no

5

indication that it plans to do so. When counsel jointly represents multiple defendants, disqualification will be warranted only when "counsel actively represented conflicting interests and . . . an actual conflict of interest adversely affected the defense lawyer's performance." Patterson v. Balsamico, 440 F.3d 104, 115 (2d Cir. 2006) (internal quotation marks and brackets omitted). That is, counsel will not be disqualified unless he actually takes a position that benefits one client to the detriment of another.

In Dunton v. County of Suffolk, 729 F.2d 903 (2d Cir. 1984), the plaintiff charged that a Suffolk County police officer had assaulted him when the officer discovered the plaintiff and the officer's wife in a potentially compromising position. See id. at 905-06. The defendants, which included the police officer and the county, were represented by the office of the Suffolk County Attorney. See id. at 906. At trial, the defendants' counsel argued that the police officer was acting outside the scope of his employment–"as an irate husband rather than a police officer." Id. Observing that this was a "good defense for the county," but "was not in the best interest of [the police officer]," the Second Circuit held that the joint representation was "inconsistent with [the attorney's] professional obligation" to the police officer and provided "ample grounds" for disqualification. Id. at 907. A new trial was therefore ordered. See id. at 910.

In Patterson, the Second Circuit emphasized that disqualification was supported in Dunton "because the defense attorney had in fact advanced arguments that were directly contrary to the individual officer's interests." Patterson, 440 F.3d at 115; see also Dunton, 729 F.2d at 908 ("As soon as the County Attorney began to undermine Officer Pfeiffer's good faith immunity defense, he was . . . acting against Pfeiffer's interest. The seriousness of this conflict made disqualification appropriate."); Weintraub v. Bd. of Educ. Of the City School Dist. of N.Y., No. 00-CV-4384, 2001

WL 984933, at *2 (E.D.N.Y. July 17, 2001) ("Disqualification of the County Attorney in Dunton became necessary at trial because it was only then that the defenses of Mr. Pfeiffer and Suffolk County were at odds."); Anderson v. Port Auth. of N.Y. & N.J., No. 83 Civ. 4903, 1985 WL 1893, at *2 (S.D.N.Y. July 11, 1985) ("In the case at bar, no actual conflict appears to exist. Counsel for the Port Authority, in filing its answer on behalf of the officers, alleges that the officers were acting within the scope of their employment at the time of the alleged assault and false arrest, and the Port Authority has given no indication that it intends to deny that now or at trial."); Paladino v. Skate Safe, Inc., No. 3252/08, 2010 WL 3359550, at *1-*2 (N.Y. Sup. Aug. 16, 2010) (disqualifying attorney from representing employer and employee after counsel argued that employee's actions were outside the scope of his employment and therefore employer should not be held liable); Cf. United States v. Schwarz, 283 F.3d 76, 92-95 (2d Cir. 2002) (finding a lapse in representation based on a conflict of interest when counsel failed to raise a plausible defense in a criminal trial that would have benefitted one client but could have hampered another client's defense in a related civil trial). In Patterson, on the other hand, there was no cause for disqualification. In that case, a former employee of the Oneida County Sheriff's Department sued, among others, the county and an individual deputy, alleging a racially hostile work environment and asserting that the individual deputy had assaulted him and taunted him with racial slurs. See Patterson, 440 F.3d at 109. The same attorney originally represented both the county and the deputy. See id. The Second Circuit noted that there was the potential for a conflict of interest because the county might "escape liability by arguing that its employees were not acting within the scope of official employment while the employee can escape liability by arguing the opposite." Id. at 115. Nonetheless, there was no actual conflict of interest because "at no time did [defense counsel] argue that [the deputy] was acting

7

outside the scope of his employment." Id. at 115. These cases teach that disqualification is not warranted by the mere existence of a potential argument that would benefit one client to the detriment of another. Rather, it is required when counsel actually puts one client's interests above another's by taking a position that benefits one and harms another.

Here, there are two separate actions–one federal and one state. The employees and PetSmart have not "taken any positions adverse to each other," either in this action or in the state court action. (See Warner Decl. at 1). There is therefore no basis on which to disqualify Littler Mendelson from representing PetSmart in this action, nor does this court have jurisdiction over representation in the state court action.

III.   PetSmart's Payment of Littler Mendelson for the Firm's Defense of the Employees in the State Court Action Does Not Require Disqualification

Plaintiff asserts that Littler Mendelson should be disqualified because PetSmart is paying for the defense of the employees in the state court action. (See Plaintiff's Memo at 11-12). Plaintiff argues that this situation motivates the employees to "assume whatever defensive position their employer PetSmart advises . . . so as to protect their employment positions and ensure that their attorneys' fees remain the responsibility of their employer." (See id. at 11).

New York's Rules of Professional Conduct prohibit a lawyer from accepting compensation for representing a client from someone other than the client unless "(1) the client gives informed consent; (2) there is no interference with the lawyer's independent professional judgment or with the client-lawyer relationship; and (3) the client's confidential information is protected . . . ." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 1.8(f). Here, Littler Mendelson has received the

8

consent of the employees. (See Warner Decl. at 1). Just as there is no evidence that the joint representation has interfered with counsel's professional judgment, there is no evidence that this compensation arrangement has done so. See Patterson, 440 F.3d at 115 (stating that disqualification is warranted only when a lawyer's performance is adversely affected). Nor has plaintiff shown that the confidential information of the employees or of PetSmart has been compromised. Plaintiff has not met the heavy burden of demonstrating that this compensation scheme even violates the ethical rules, let alone "poses a significant risk of trial taint." Glueck, 653 F.2d at 748. Lastly, to the extent that this Motion addresses legal representation in the state court action, it is beyond the jurisdiction of this court and plaintiff herein has no standing to raise such an issue.

IV. Plaintiff's Alleged Disclosure of Confidential Information Does Not Merit Disqualification

As noted above, plaintiff also argues that Littler Mendelson must be disqualified from representing defendant PetSmart because he formed an imputed attorney-client relationship with and imparted confidential information to the firm when he was interviewed as a witness in his capacity as a PetSmart employee regarding two other wrongful termination cases. (See Plaintiff's Memo at 3-4). Specifically, he asserts that he spoke repeatedly with Littler Mendelson attorneys David Warner and Michael Pappas regarding the Smalls Litigation and the Lothian Litigation. (Perez Aff. at 1-2). Plaintiff asserts that he "shared personal information . . . including but not limited to [his] involvement in prior lawsuits, [his] personal life including information about [his] spouse and children, and [his] employment history." (Id. at 3). Littler Mendelson strenuously disputes these assertions. The firms presents evidence in the form of declarations that (1) Warner has never spoken to plaintiff (see Warner Decl. at 1); (2) Pappas has not spoken to plaintiff, "except to the extent that

[they] may have exchanged words during [plaintiff's] deposition in the Smalls Litigation" (see Declaration of Michael P. Pappas ("Pappas Decl.") at 1); (3) former Littler Mendelson Associate Orit Goldring interviewed plaintiff only to determine whether he had knowledge of the facts in the Smalls Litigation, but during that interview, plaintiff did not request legal advice, request that Littler Mendelson represent him, or share any confidential, personal information[1] (see Pappas Decl. at 2); and (4) Littler Mendelson "has no record of any matter for PetSmart, Inc. being opened for a legal proceeding brought by an individual bearing the last name 'Lothian'" (see Declaration of Robert A. Domingues at 2; see also Warner Decl. at 2).

In order to disqualify Littler Mendelson based on prior representation, plaintiff must show "(1) the existence of a prior attorney-client relationship and (2) that the former and current representations are both adverse and substantially related." Solow v. W.R. Grace & Co., 83 N.Y.2d 303, 308 (1994); see also Evans, 715 F.2d at 791 ("[A]n attorney may be disqualified from representing a client in a particular case if (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client."). This rule is intended to protect client confidences and to avoid the appearance of impropriety. See Talvy v. Am. Red Cross in Greater N.Y., 618 N.Y.S.2d 25, 28 (App. Div. 1994). As to the first requirement, it is not necessary that the prior representation resulted from a formal attorney-client relationship. See Blue

---

[1] For his part, plaintiff avers that he has never spoken to an attorney named Orit Goldring. (See Perez Aff. at 3).

10

Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 276 (S.D.N.Y. 2004) ("In certain circumstances, disqualification may be appropriate when an attorney gains access to the confidences even of someone who is not formally a client.") Rather, the dispositive question in determining whether there is a de facto attorney-client relationship is whether the person from whom confidences were received had a reasonable expectation that the attorney would keep such information confidential. See id. at 276-77; see also Cohen v. Acorn Int'l, Ltd., 921 F. Supp 1062, 1064 (S.D.N.Y. 1995) ("'[B]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client'" (quoting Allegaert v. Perot, 565 F.2d 246, 250 (2d Cir. 1977)) (emphasis omitted)); Ello v. Singh, No. 05-CV-9625, 2006 WL 2270871, at *3 (S.D.N.Y. Aug. 7, 2006). The second factor–whether there is a substantial relationship between the matters–"requires a determination with respect to whether the facts which were necessary to the first representation are necessary to the present litigation." Blue Planet Software, 331 F. Supp. 2d at 277.

The parties present conflicting evidence in support of their respective positions on this issue. However, the Court need not weigh this conflicting evidence because plaintiff's own submissions demonstrate that Littler Mendelson should not be disqualified on this basis.

First, plaintiff did not form a de facto attorney-client relationship with any Littler Mendelson attorneys he may have spoken to. "Unless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees." Id. at 149. Plaintiff admits there was no such express agreement here. (See Plaintiff's Memo at 3 ("[P]laintiff . . . never formally retained the services of Littler [Mendelson] . . . .")).

11

Rather, plaintiff allegedly revealed confidences to Littler Mendelson attorneys in the context of the firm's defense of PetSmart against allegations of wrongful termination in another action. (See Perez Aff. at 1 ("I have worked extensively with Defendant's counsel, the law firm of Littler Mendelson, P.C. on two (2) wrongful termination cases involving two former Petsmart [sic] employees . . . .")). Knowing that Littler Mendelson represented PetSmart, plaintiff could not have reasonably believed that information he provided to the firm in the course of that representation would be kept confidential and not shared with the corporation. See, e.g., Talvy, 618 N.Y.S.2d at 149-50 ("Plaintiff had no reason to believe that his communications with [his employer's law firm], in the course of his employment with New York Red Cross, would not be shared with his employer."); Fairfield Fin. Mortg. Grp., Inc. v. Luca, No. 06-CV-5962, 2009 WL 3232780, at *5 (E.D.N.Y. Sept. 30, 2009) ("It would be unreasonable for Luca to believe that any information he provided to Haskel in the course of Haskel's representation of the corporation would be kept confidential."). Indeed, Littler Mendelson "had an obligation to disclose to its client . . . whatever it learned from its client's employees in carrying out its duties as counsel." Talvy, 618 N.Y.S.2d at 150; see also Ello, 2006 WL 2270871, at *5. Thus, plaintiff has failed to satisfy his burden at the first step of the inquiry.

Plaintiff similarly fails to establish that the instant litigation is substantially related to the prior matters he allegedly participated in. As noted, plaintiff asserts that he spoke to attorneys from Littler Mendelson regarding two prior wrongful termination actions. (See Perez Aff. at 1-2). His argument that the prior matters are substantially related to the present litigation consists of one sentence in the Zack Declaration and the identical sentence in Plaintiff's Memo: "Moreover, the present action, which involves Plaintiff's wrongful termination from defendant PetSmart is the same type of case in which plaintiff Perez worked extensively with Warner and Littler during the two

previous matters." (Zack Decl. at 4-5; Plaintiff's memo at 4). Asserting that the prior actions also involved allegedly wrongful terminations does not identify any "common factual question" that is "material to both the prior and present representations." U.S. Football League v. Nat'l Football League, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985); see also Blue Planet Software, Inc., 331 F. Supp. 2d at 277 (finding a substantial relationship when "many of the [factual] issues that will arise in the [present] case are essentially the same as in the earlier case"). It is impossible to determine from this mere skeleton of an argument "whether the facts which were necessary to the [the Smalls and Lothian Litigations] are necessary to the present litigation," as is required in order to find that the litigations are substantially related. See Blue Planet Software, Inc., 331 F. Supp 2d at 277. Therefore, plaintiff has not shown that the putative prior representation is substantially related to the present case.

V.  Littler Mendelson Has Not Violated Its Duty Under Rule of Professional Conduct 4.1

Plaintiff asserts that one or more Littler Mendelson attorneys stated in a telephone conference with the Court that a video surveillance tape of the relevant date from the PetSmart store at which plaintiff and the four Employees worked had been destroyed. (See Zack Decl. at 7; Plaintiff's Memo at 12-13). However, counsel for PetSmart in plaintiff's Worker's Compensation Claim allegedly informed plaintiff's counsel that PetSmart retains surveillance tapes and certain tapes would be presented in the Worker's Compensation proceeding. (See Zack Decl. at 7; Plaintiff's Memo at 13). Therefore, plaintiff argues that attorneys from Littler Mendelson made a knowingly false statement

13

in violation of New York Rule of Professional Conduct 4.1 ("Rule 4.1").[2]  The evidence does not demonstrate that a knowingly false statement was made.

Rule 4.1 states, "In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 4.1.  Defendant points out that the Affidavit of Michael Mainville ("Mainville Aff."), which was served on plaintiff as part of defendant's opposition to plaintiff's first motion to disqualify, confirms that the surveillance video for the relevant date of October 7, 2010, had been overwritten and deleted by November 4, 2010, which was the date that Mainville attempted to view the video and preserve it in compliance with an order from the Suffolk County Supreme Court.  (See Opp. at 16; see also Warner Decl., Exh. 3 (Suffolk County Supreme Court order); id., Exh. 4 (Mainville Aff.)).  According to the Mainville Affidavit, the earliest date from which video was able to be preserved was October 13, 2010.  (See Mainville Aff.).  Because plaintiff's Worker's Compensation claim is based on an alleged injury that occurred on October 20, 2010, the video that is relevant to the Worker's Compensation claim might well have been preserved.  (See Opp. at 17).  Thus, the (hearsay) statement that was made to plaintiff's counsel asserting that PetSmart surveillance video would be presented at the Worker's Compensation proceeding does not contradict the statement that the October 7, 2010 video has been overwritten.  Moreover, the only competent evidence before the Court demonstrates that the video from October 7, 2010 has been destroyed.  (See Mainville Aff.).

---

[2]Plaintiff mistakenly invokes New York Rule of Professional Conduct Rule 4.2, which concerns communication with persons represented by counsel, rather than Rule 4.1, which concerns truthfulness in statements to others.  Compare N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 4.1 with id., Rule 4.2.

14

## CONCLUSION

For the foregoing reasons, plaintiff's Motion to Disqualify Littler Mendelson from representing defendant is DENIED. Defendant's request for sanctions is also DENIED because the Court does not find that plaintiff's actions were taken in bad faith. See Int'l Brotherhood of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991); Olivieri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).

**SO ORDERED:**

Dated: Central Islip, New York
September 12, 2010

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge